IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| KELLY MICHAEL DOLLARD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 07-00392-CV-W-REL-SSA |
| | ) |
| MICHAEL J. ASTRUE, Commissioner | ) |
| of Social Security, | ) |
| | ) |
| Defendant. | ) |

**ORDER DENYING DEFENDANT'S MOTION TO REVERSE AND REMAND**

Before the court is Defendant's Motion to Reverse and Remand (Doc. No. 14). Specifically, Defendant acknowledges that "the record demonstrates Plaintiff has significant objective medical abnormalities," the Administrative Law Judge's ("ALJ") evaluation of Dr. Truett L. Swaim's opinion is "problematic at best," and that his credibility findings "were not sufficient" (Doc. No. 17). Defendant argues that despite these deficiencies, "the evidence in the record as a whole does not support a reversal and remand for immediate payment of benefits for the period under consideration." (Doc. No. 17). Accordingly, Defendant requests the case be remanded in order for the ALJ to update the record and obtain evidence from an orthopedic medical expert.

In response, Plaintiff's cites to the report of his long-time treating physician Dr. George Windsor that "summarizes [his] tortured medical treatment and the progression of [his] condition" (Doc. No. 15). He argues that the "report is a substantial and objective report from a treating source and it is more than sufficient to sustain a reversal with an award of benefits." Plaintiff further

1

contends that Dr. Swaim's report also provides "ample evidence from which this Court can reverse and award benefits" (Doc. No. 18).

## A. STANDARD

The Eighth Circuit stated in Buckner v. Apfel, 213 F.3d 1006, 1011 (8th Cir. 2000) as follows:

> Ordinarily, when a claimant appeals from the Commissioner's denial of benefits and we find that such a denial was improper, we, out of "our abundant deference to the ALJ," remand the case for further administrative proceedings. Consistent with this rule, we may enter an immediate finding of disability only if the record "overwhelmingly supports" such a finding.

(citations omitted). Whether to grant the Commissioner's request to remand for further consideration is a matter of discretion with the district court. Ingram v. Barnhart, 303 F.3d 890, 893 (8th Cir. 2002).

## B. MEDICAL EVIDENCE

### 1. *Truett L. Swaim*, *M.D.*

Dr. Swaim is a board certified orthopedic surgeon (Tr. at 482). The ALJ gave "little weight" to Dr. Swaim's opinion, stating

> his opinion that the claimant was unable to work was inconsistent with his clinical findings that he was capable of sedentary work. Thus, his opinion appeared to be based upon the subjective complaints of the claimant as well as the fact [that] it is clear he can no longer participate in the manual labor jobs he performed in the past. The fact the claimant can no longer perform such work does not render him unable to maintain gainful employment. Additionally, his opinion is more restrictive tha[n] the opinions of the claimant's treating physicians.

(Tr. at 24).

Dr. Swaim first performed an independent medical examination ("IME") on Plaintiff on June 30, 2003 (Tr. at 473). Defendant was scheduled to undergo a second IME on August 29, 2005, but

Dr. Swaim cancelled the examination, as he felt it premature due to Plaintiff's persistent problems with a pseudomeningocele[1] (Tr. at 471, 473). The examination was subsequently conducted on April 24, 2006 (Tr. at 473-482). Physical examination of Plaintiff's lumbar spine revealed severe tenderness in the lumbar paraspinous region and both sacroiliac joints (Tr. at 479). He noted swelling in the lumbar area without a distinct palpable fluctuant mass (Tr. at 479). Lasegue's sign[2] was mildly positive on the left (Tr. at 479). Patrick's sign[3] was positive bilaterally (Tr. at 479). Bragard's sign[4] was mildly positive on the left (Tr. at 479). Soto-Hall[5] sign was positive on the left (Tr. at 479). Straight leg raising,[6] performed sitting, was mildly positive on the left (Tr. at 479). There was pain with range of motion testing (Tr. at 479). Additionally, Dr. Swaim noted significant muscle spasm and guarding on examination[7] (Tr. at 480). Dr. Swaim diagnosed Plaintiff with chronic lumbar pain and lumbar radiculopathy,[8] persistent muscle spasm and significant range of

---

[1] A pseudomeningocele is an abnormal collection of cerebrospinal fluid that communicates with the cerebrospinal fluid space around the spinal cord. The fluid has no surrounding membrane but is contained in a cavity within the soft tissues.

[2] Lasegue's test is also referred to as "Bragard's test." "Flexion of the affected limb's hip is not painful, but extension of the knee while the hip is flexed is painful. Such pain would indicate sciatica and spinal cord nerve root compression." See MES Solutions, Lasegue's Test, *at* http://www.mesgroup.com/glossary/tests.asp (last visited May 16, 2008).

[3] Patrick's, or Faber's, test is used the determine the presence of sacroiliiac disease. See MES Solutions, Patrick's Test, *at* http://www.mesgroup.com/glossary/tests.asp (last visited May 16, 2008).

[4] See footnote 2, supra.

[5] "With the patient lying on his/her back, the spine is flexed (bent) beginning at the neck and going downward. Pain will increase when the affected area of the spine is flexed."

[6] "A positive test results in pain in the sciatic nerve distribution and suggests a disc herniation." See MES Solutions, Straight Leg Raising, *at* http://www.mesgroup.com/glossary/tests.asp (last visited May 16, 2008).

[7] Muscle guarding and spasms are a response to pain.

[8] Radiculopathy is a "[d]isorder of the spinal nerve roots." STEDMAN'S MEDICAL DICTIONARY 1622 (28th ed. 2006).

3

motion deficit, and with a persistent pseudomeningocele (Tr. at 480).

Based on the examination and a review of Plaintiff's medical records, Dr. Swaim rendered the following opinion:

> Prognosis: Mr. Dollard has a lumbar condition which will cause ongoing back pain and lumbar radiculopathy. His lumbar pseudomeningocele will necessitate additional evaluation and treatment; and he will have ongoing severe headaches as long as the pseudomeningocele is present.
>
> Maximum Medical Improvement: Mr. Dollard has not reached maximal medical improvement from treatment of the occupational injury of August 30, 2001.
>
> If for some reason Mr. Dollard does not receive additional evaluation and treatment for his lumbar condition, he should be viewed as being at maximal medical improvement and the following disability rating would apply.
>
> Permanent Disability Evaluation: Mr. Dollard is permanently totally disabled due to his lumbar condition and headaches related to the lumbar pseudomeningocele. The occupational injury of August 30, 2001, Mr. Dollard sustained working for Rival Manufacturing caused, or was the prevailing and substantial contributing factor to cause Mr. Dollard to become permanently totally disabled.
>
> Work/Functional Capacity: Mr. Dollard should restrict occupational/functional stresses to a sedentary work level according to the U.S. Department of Labor, *Dictionary of Occupational Titles*. With the ability to exert up to 10 pounds of force on an occasional basis, and/or negligible amount of force on a frequent or constant basis, to move objects. He should avoid repetitive bending, stooping, twisting, squatting, climbing, kneeling, or crawling. He should avoid prolonged sitting, standing, or walking; with the ability to change positions frequently. He needs to lie down during the day to control back pain and positional headaches. He should avoid repetitive, prolonged, or forceful use of the upper extremities above shoulder height.
>
> Considering the effects of Mr. Dollard's functional limitations in combination with his age, educational background, and occupational history, it is not expected that Mr. Dollard is capable of obtaining or maintaining gainful employment.

(Tr. at 481-82).

Defendant agrees that "[t]he totality of medical opinion evidence indicated that although Plaintiff's condition improved at times, over the course of the alleged period of disability, Plaintiff

4

had significant functional limitations." As such, Defendant seeks remand to "update the record and obtain evidence from an orthopedic medical expert to clarify the nature and severity of Plaintiff's impairment." The record already contains such evidence. Dr. Swaim is a board certified orthopedic surgeon and has examined Plaintiff at least twice. Accordingly, remand for further consideration on this ground is unnecessary.

**2.** *George Windsor*, *D.O.*

In denying Plaintiff's claim for benefits, the ALJ found it "noteworthy that no treating physician opined the claimant was incapable of performing work activity" (Tr. at 24). Following the ALJ's decision, Plaintiff requested a review by the Appeals Council and submitted additional evidence consisting of medical records, a report and Medical Source Statement from long-time treating physician Dr. Windsor.[9]

Dr. Windsor has been Plaintiff's treating physician since 1994 (Tr. at 616). On October 20, 2006, Dr. Windsor provided a recitation of Plaintiff's medical history and rendered an opinion as to Plaintiff's then-current condition (Tr. at 616-621). He stated, in relevant part:

> Mr. Dollard currently suffers from chronic lumbar pain with pain radiating down his legs, weakness in his back and legs and persistent muscle[] spasms. Mr. Dollard must use a cane for ambulating short distances. In addition, Mr. Dollard has limitations with regard to sitting, standing, walking, reaching, pushing, pulling, bending, stooping, twisting, climbing, squatting, and kneeling to such a degree that his limitations keep him from being able to perform basic work activities. Due to his current functional limitations, educational background, and work background, I do not believe Mr. Dollard is capable of full time employment, including sedentary work. Mr. Dollard will continue to suffer many physical complications as a result of his work injury and will necessitate additional evaluation and treatment as Mr. Dollard ages.
> In order for Mr. Dollard to control his back pain and positional headaches, he

---

[9]I note that the ALJ did not have the benefit of these records of significant import when rendering his decision.

must lie down during the day. Also, he is unable to change from positions without difficulty and requires assistance of some type. Mr. Dollard has been seen in my office on several occasions with regard to his injuries. In addition, Mr. Dollard is also a current patient so I am aware of his medical history and current physical limitations. . . .

At times during Mr. Dollard's treatment his condition would improve for short durations. However, before Mr. Dollard was able to fully recover and return to work he would again suffer a medical setback that would require additional treatment. His treatment history and the numerous complications are tortuous.

I am mindful that some physicians have asserted at different times during his treatment that he could return to some [type] of work. However, these statements appear to have been made by workers' compensation doctors in connection with a workers' compensation claim and such statements were made in the course of his treatment and do no take into consideration the medical set backs which followed these short periods of improvement.

I feel that an objective review of the entire medical history of Mr. Dollard clearly indicates that he has had severe functional restrictions since 2001. These restrictions are still present. In addition, his work history and educational background need to be considered, along with his functional restrictions.

(Tr. at 621).

Dr. Windsor also completed a Medical Source Statement that same date in which he opined Plaintiff could occasionally lift and/or carry less than ten pounds and also frequently lift and/or carry less than ten pounds (Tr. at 908). He could stand and/or walk less than two hours in an eight-hour workday; a medically-required hand-held assistive device was necessary for ambulation (Tr. at 908). Sitting was also affected by the impairment. Plaintiff could sit less than six hours in an eight-hour workday and must periodically alternate between sitting, standing and lying down to relieve pain and discomfort (Tr. at 909). Plaintiff's ability to push and/or pull was limited in both his upper and lower extremities (Tr. at 909). He could balance with a cane frequently, kneel occasionally, but never climb, crouch, crawl, or stoop (Tr. at 909). Plaintiff was occasionally limited in reaching all directions (Tr. at 910). He was also limited by temperature extremes, vibration and hazards (Tr. at 911).

6

Dr. Windsor has been Plaintiff's treating physician since 1994. "A treating physician's opinion is given controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." House v. Astrue, 500 F.3d 741, 744 (8th Cir. 2007); see also 20 C.F.R. § 404.1527(d)(2)("Generally we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.").

Here, Dr. Windsor was familiar with Plaintiff's medical history and physical limitations. Both his opinion letter and medical source statement were based on this familiarity as well as a review of the objective medical evidence. Dr. Windsor's opinion is consistent with other substantial evidence. In fact, the limitations contained in Dr. Windsor's medical source statement parallel those contained in Dr. Swaim's functional capacity assessment. I find this record sufficient to decide whether Plaintiff is disabled without remand.

## C.  CONCLUSION

Because the record as a whole "overwhelmingly supports" a finding that Plaintiff was disabled during the time at issue in this case, it is

ORDERED that Defendant's Motion to Reverse and Remand is denied. It is further

ORDERED that Defendant shall respond to Plaintiff's motion for summary judgment by June 23, 2008.

7

/s/ Robert E. Larsen
ROBERT E. LARSEN
United States Magistrate Judge

Kansas City, Missouri
May 22, 2008